## MONTY v. ARNESON.

### I. Per CURIAM.

1. Intoxicating liquor: REPLEVIN OF. While traffic in intoxicating liquor as an article of beverage is, under the statute, unlawful, it nevertheless retains the character of property.

2. —— The liquor of A, kept for sale in violation of the statute, was taken by a sheriff upon an execution against B, and afterward replevied by A from the sheriff. Upon the trial it was shown to be A's property, but kept in violation of law, and thereupon judgment was rendered against A for the value of the liquor: *held*, that the judgment was erroneous. Section 1571 of the Revision construed.

### II. Per COLE, J., dissenting.

3. ——Intoxicating liquors kept with unlawful intent are, by the fifteenth section of the act for the suppression of intemperance (Rev. § 1571) deprived of the element of property; and, under said section, which provides that "no action shall be maintained for the recovery or possession of intoxicating liquor, or the value thereof, except in case where persons owning or possessing such liquor with lawful intent may have been illegally deprived of the same," an action of replevin, in the case above stated, will not lie.

*Appeal from Winneshiek District Court.*

THURSDAY, JULY 23.

ACTION of replevin for certain intoxicating liquors, and the vessel containing the same, taken by defendant on an execution against one Cleghorn. The petition avers that the absolute property in the things replevied, and the right of possession thereof, are in plaintiff, and contains other necessary allegations showing his right to recover.

The answer denies the averments of the petition, and, as a further defense, sets out that Cleghorn was the owner of the property replevied, which was held by him or defendant to be sold in violation of law.

Trial by the court without a jury, and the following facts were found, viz. : That the property in controversy was owned by plaintiff at the time it was levied upon by defendant under the execution, and was kept by him to be sold in violation of law; that Cleghorn at that time was in the actual possession thereof, and that the creditors upon whose judgment the execution issued, recovered such judgment in good faith for goods sold, etc.

The other facts found it is not necessary to state. Judgment for defendant against plaintiff and his sureties for the value of the property replevied in the sum of $459. Plaintiff appeals.

The judgment of the District Court was affirmed by reason of a division in the opinions of the justices of this court, at the June Term, 1867. LOWE, Ch. J., and COLE, J., being of opinion that the judgment below should be affirmed; DILLON and WRIGHT, JJ., that it should be reversed. A rehearing was ordered at the December Term, 1867, and the points involved again submitted for for the determination of the court.

*Burdick & Patterson* for the appellant.

*L. Bullis* and *R. Noble* for the appellee.

BECK, J. — The only point in this case necessary to be determined, is the one arising upon the construction of

1. INTOXICA-TING LIQUOR: replevin of.    section 1571 of the Revision, or rather a clause of that section, which is in the following words : " Nor shall any action be maintained for the recovery or possession of any intoxicating liquors, or the value thereof, except in cases where persons owning or

possessing such liquor, with lawful intent, may have been illegally deprived of the same." The defendant contends, that, inasmuch as the liquor was kept by plaintiff with the intent of selling the same in violation of law, yet, although his title thereto was perfect and without fraud, he cannot support an action to recover it against the sheriff who took and holds it wrongfully.

In other words, the plaintiff has no right in the liquor that the law will recognize and enforce. The language of the statute just quoted, considered without reference to principles of interpretation, would seem to warrant this view.

The object of the act, of which the section above referred to is a part, is to suppress the manufacture, use of, and traffic in, intoxicating liquor, except for mechanical, medicinal, sacramental and culinary purposes.

The traffic in such liquor, as an article of beverage, is prohibited; but for other purposes it is recognized as an article of commerce, as other property, though its sale in small quantities is guarded with certain very stringent restrictions. In addition to making such traffic penal, the statute, in order more completely to suppress its use directs the seizure and destruction of liquor, upon legal process, when kept for sale contrary to law. And, in order the more effectually to accomplish the object of the act, the section above referred to takes away all remedies upon contracts made for its sale, prevents recovery for money and property paid therefor, and, in a word, renders null and void all such contracts, and provides that they shall in no manner be recognized in the courts of the State.

The obvious reason of these stringent provisions is the great difficulty of suppressing the baneful use of intoxicating liquor as a beverage, which all experience has demonstrated to be a sure poison of the body, mind and

soul of man. The appetite of its victims and the love of gain of the vendors of this poison, rivaling each other in insatiate thirst, successfully unite to evade and break down the usual barriers provided by the law, to protect the morals, health and lives of the people.

Hence the act withdraws from it the protection usually extended to property, and declares commerce in it unlawful.

But the act must not receive a construction that will render its provisions absurd in effect, or cause it to work manifest injustice and absolute dishonesty and crime. However commendable the object of the act may be, and however desirable it is that it be construed to the end that its object may be attained, yet we can give it no interpretation whereby we recognize the jesuitical principle, "evil may be done that good may come," or stimulate its execution by a premium upon motives as base and unworthy as those which prompt its violation. Yet such would in fact be the effect of the construction we are asked to give the law. We are asked to hold that an officer under an execution may enter a dram shop, seize the liquor and vessels containing it, which he may find there, as the property of the defendant in execution, though there is no pretense that he owns them.

If the property is replevied, judgment is taken against the owner of the liquor for the amount of the execution, and costs, of which, in truth, he does not owe one cent!

We cannot believe that a legislature in this enlightened age and Christian land ever intended any such result to come of the enactment.

But, it is urged, the intoxicating liquor, being held with intent to violate the law, is not property. If that be so, what right had the sheriff to seize it on the execution, or the court to render a judgment for its value?

These very acts recognize the fact that it is property,

for, if it were not, the sheriff could not take it, and the court could not assess its value, and render judgment therefor. But this court has held, that it is property, and an indictment will lie for larceny in feloniously taking it. *State* v. *May*, 20 Iowa, 308.

If it is property, on what principle can it be made liable to pay the debts of one not its owner? If one who feloniously takes it is guilty of larceny, ought not one who takes it as a trespasser be liable for such trespass? If not, all the thief must do, in order to escape the penitentiary for taking such property of another, will be to change his tactics, and, instead of going in the night and breaking doors and windows, to make his visit boldly in the day-time, and, with force, if necessary, carry away the property. No action can be brought against him for the trespass, and, if the fruits of his crime are taken from him on a writ of replevin, he will recover the value thereof in a judgment against his victim.

The doctrine contended for is most absurd and wicked in its result, and thus refutes itself. There might be some plausibility in the theory, that, inasmuch as the law seems to withdraw all protection from the owner of this kind of property, therefore, to accomplish its object and carry out its spirit, all men may have a right to destroy intoxicating liquor wherever it may be found as a public nuisance, and that such is the officer's duty when seizing it upon a writ; this view would have, at least, the merit of greater consistency. But when we, in a breath, declare, that it is not property, and entitled to none of the protections of property, yet may be levied upon by an officer of the law, and replevied as other property, all to result in a judgment against its owner for the debt of another man, it amounts not only to inconsistency, but reaches the climax of absurdity.

On the other hand, should it be admitted that intoxicat-

ing liquor is the subject of property, but regarded by the law as of such destructive character to the lives, health and happiness of the people, that all protection is withdrawn from its owner when held for an unlawful purpose, and that it is contraband of society, to be seized as such by any citizen or officer, yet, on what principle can the one seizing it convert it into money, and appropriate the proceeds to himself or the use of another? Surely this would be quite as reasonable and less objectionable in principle than the recovery of its value, as in the case before us, by judgment against the owner.

We do not understand that the points made by the appellee are sustained by the cases adjudged in this court arising under the act for the suppression of intemperance. Nor do we find it necessary to doubt any doctrine contained in them. We are certainly not inclined by construction to take from the provisions of that act aught that will diminish its efficiency in suppressing the terrible social evils of intemperance, and in staying the flood of wretchedness which continually flows therefrom over the land. The law, if faithfully enforced, will heal all these woes and dry up this bitter stream. To the people, who choose the ministers of the law and the guardians of their rights and safety, is committed the duty to see that it be faithfully executed. While approving the spirit of the act, and sincerely hoping the approach of the day when its philanthropic object — the perfect suppression of intemperance — will be attained, we are unwilling to give it a construction which would make it the instrument of dishonesty and an object of odium.

Intoxicating liquor is the subject of property; the commerce in it as an article of beverage is unlawful, but its character as property is not thereby destroyed. *State* v. *May*, 20 Iowa, 305; *Brown* v. *Perkins*, 12 Gray, 89; *Preston* v. *Drew*, 33 Maine, 558. In *Ingalls* v. *Baker*,

Monty v. Arneson.

13 Allen, 449, it is held that the owner of intoxicating liquor can maintain an action for its value against an officer seizing it upon an execution as the property of another. The facts of this case are quite similar to the one before us. In *Nichols* v. *Valentine*, 36 Maine, 322, it is ruled that such liquor cannot be taken upon execution. These cases were decided under statutes containing provisions similar to our own.

The keeping of such liquor for an unlawful purpose is an offense punishable under the statute, which also subjects the liquor to destruction, and points out the manner of enforcing its stringent provisions. Let the law be faithfully enforced in the manner it directs; its object then will soon be accomplished, far sooner than by regarding intoxicating liquors free booty to all who have consciences that will allow them to collect the debts due them from the property of those who are not their debtors.

Reversed.

COLE, J. (dissenting). — I do not concur in the foregoing opinion. I think the judgment should be affirmed.

Some of the reasons which influence my conclusion may be briefly stated.

Section 1571 of the Revision of 1860, is as follows:

" All payments or compensation for intoxicating liquor hereafter sold in violation of this act, whether such payments or compensation be in money, goods, land, labor or any thing else whatsoever, shall be held to have been received in violation of law and against equity and good conscience, and to have been received upon a valid promise and agreement of the receiver in consideration of the receipt thereof, to pay on demand to the person furnishing such consideration the amount of said money or the just value of such goods, land, labor or other thing. All sales, transfers, conveyances, mortgages, liens, attach-

ments, pledges and securities of every kind which, either in whole or in part, shall have been made for or on account of intoxicating liquors sold in violation of this act, shall be utterly null and void against all persons in all cases, and no rights of any kind shall be acquired thereby, and no action of any kind shall be maintained in any court in this State for intoxicating liquors, or tho value thereof, sold in any other State or country contrary to the law of said State or country, or with intent to enable any person to violate any provisions of this act *nor shall any action be maintained for the recovery or possession of any intoxicating liquor, or the value thereof except in cases where persons owning or possessing such liquor, with lawful intent, may have been illegally deprived of the same."* * * * *

The foregoing opinion quotes the italicised language above, and states, that it, " without reference to principles of interpretation, would seem to warrant the view," that " the plaintiff has no right in the liquor that the law will recognize and enforce." The only " principle of interpretation," however, which is alluded to in the opinion, is, that the view that the plaintiff cannot maintain the action, " is absurd." Now, I concede, that where the language of a statute will admit of two constructions, the fact, that one construction leads to an " absurd " or unjust result, while the other does not, that fact will determine in favor of the latter construction. But where the language of a statute is plain and susceptible of only one construction, it is not competent for a court to refuse to enforce the statute, because, in the opinion of the court, the result effectuated by the statute " is absurd." The legislative will is not thus to be disregarded; it is the duty of the court to obey and enforce it.

But I deny that the result of the judgment of the District Court " is absurd." I admit, however, that by the

judgment of the District Court the value of the intoxicating liquors which the plaintiff once owned is applied to the payment of the debt of another person.

The experience of the people of this State, as well as of most others, abundantly proved that the sale of intoxicating liquors as a beverage could not be suppressed by simply visiting upon the offender a pecuniary penalty. The unwillingness of private citizens to become prosecutors, afforded immunity, to a very great extent, to all offenders. And the profits arising from the traffic were so great as to enable persons engaging in it to pay all fines actually enforced against them, and still leave a margin of profit equal to, if not largely more than, could be realized in legitimate avenues of trade. Hence the legislature sought, by the enactment of the law for the suppression of intemperance, the fifteenth section of which is above quoted, to "lay the axe to the root of the tree" by robbing intoxicating liquors kept with unlawful intent, of the element of property, and make it for the interest of the citizens to enforce the law.

The legislature has, in effect, said, that, where a person holds intoxicating liquor for an unlawful purpose, he holds the same without any legal right thereto which he can enforce in the courts of this State. It may be taken from him and destroyed. Rev. § 1566. If he sells it and receives money or property for it, the money or property may be recovered from him by action. § 1571. If he buys a homestead for his family, and pays for it in intoxicating liquor, himself and family may be turned out of doors, and the party who sold it to him may recover the homestead, and still keep the liquors and their proceeds. § 1571. All these things, and many others, doubtless very "absurd" to my brothers, are so clearly and expressly provided for, that they cannot be, and are not, denied. And yet the statute has been by this court held constitu-

tional, and, in most of the features named, directly enforced.

It is true this court has held that intoxicating liquors are or may be the subject of larceny. *The State* v. *May,* 20 Iowa, 305. So may counterfeiting tools, held by a counterfeiter for an unlawful purpose, be the subject of larceny; and yet, I question very much whether a counterfeiter could maintain replevin for them against an officer who had seized them; and this although there is no special statute denying the right.

But it is *held,* in *The State* v. *May, supra,* that the owner of intoxicating liquors kept for illegal sale *is remediless by suit for any trespass in relation to them. That the statute has denied all remedy to the violators of the law,* although the liquor. is, in its essential nature, property; but that the statute had not declared that the stealing of it should not be punished, hence it should be punished. Now, to say, because intoxicating liquor may be the subject of larceny, that it follows that the owner may maintain trespass or replevin for such liquor, although the latter right is expressly denied by the statute, is, to use the potent argument of the majority opinion, "absurd."

But let us look at the decisions of this court upon this particular section, and. see whether or not every previous case thereon is not in effect overruled as "absurd" by the majority opinion in this. In *Smith* v. *Grable* (14 Iowa, 429), it was held, that, where a party exchanged goods for intoxicating liquors sold in violation of law, he might recover the same by action. Here it will be observed, that the intoxicating liquors of one man are, without his consent, but by judicial sanction, taken and applied to the use of another. Now, this is the very thing which, in the majority opinion, is called "absurd," and for that reason the statute is not enforced. In *Davis* v. *Slater* (17 Iowa, 250), one Sterne rented his farm to the defendant,

Slater, for one year, Slater agreeing to pay therefor, as rent, six hundred bushels of corn. Sterne sold this claim for rent, to the plaintiff, Davis, in consideration of certain intoxicating liquors, sold in violation of law. Davis sued Slater to recover the rent, and this court held, that he could not recover, and this, although Slater still owed the rent and was not a party to the contract of illegal sale. The court, in the opinion prepared by the present chief justice, denied the right of the plaintiff to recover because the statute, "in language the *plainness* of which is equaled only by its comprehensiveness," declares all contracts on account of intoxicating liquors, sold in violation of law, to be utterly null and void against all persons in all cases. Here, it will be noticed, that this court discharged a man from the payment of a just debt to his creditor, because that creditor had sold intoxicating liquors in violation of law to another party. It does seem to me, that from the stand-point of my brothers concurring in the majority opinion, the " absurd " argument could have been used with even greater propriety in favor of the plaintiff, Davis, in that case, than in favor of Monty in this. Did the judgment in favor of Slater "recognize the jesuitical principle," or "work absolute dishonesty and crime?" Let the majority opinion answer.

The case of *Sommer* v. *Cate* (22 Iowa, 585), holds, that, before a plaintiff can recover for any intoxicating liquors in any action, he must aver in his petition, and prove on the trial, that he owned or possessed the liquors sued for, with lawful intent. In the case now under examination, it was not averred in the petition, nor proved on the trial, that the plaintiff owned or possessed the liquors sued for, with lawful intent; but, on the contrary, it was proved and found as a fact by the court, that the intoxicating liquors in controversy were owned by plaintiff *and kept by him to be sold in violation of law.* Under the rule,

therefore, as settled by this court in the case of *Sommer* v. *Cate* (*supra*), the plaintiff could not recover; and yet, by the majority opinion in this, the judgment against the plaintiff is reversed, and it is said in it that appellee's claim is not "sustained by the cases adjudged in this court arising under the act." I think otherwise.

In the case of *Church* v. *Simpson* (p. 408), it is expressly held, in an opinion prepared by the writer of the majority opinion in this case, that the vendor of intoxicating liquors sold in violation of law may be garnisheed by a creditor of his vendee, and required to pay the money received for such liquors, in satisfaction of the debt of his vendee, to the garnishing creditor. In the case of *Church* v. *Simpson* (*supra*), the proof did not show that Simpson had sold *intoxicating* liquors *in violation* of law, and hence he was not held 'liable. But the principle was settled and expressly stated in substance as above. Hence we find that, under our statute, intoxicating liquors held in violation of law, or the proceeds of their sale, may be, yea, under the statute, *must be*, when judicially claimed, taken and applied in payment of "the debt of another man," or "for the use of another." It will be seen that, by the doctrine of the case of *Church* v. *Simpson*, to use the very mistaken language of the majority opinion, the "climax of absurdity is reached," that the "jesuitical principle is recognized," and that the statute is made to "receive a construction that will render its provisions absurd in effect, or cause it to work manifest injustice and absolute dishonesty and crime," and the property or money of the liquor seller may be taken to pay a debt, "of which in truth he does not owe one cent."

I have thus given the statute and the adjudications under it. My reasons for dissenting from the majority opinion are, briefly, that it is in conflict with the previous decisions of this court. It is in conflict with the

plain letter of the statute, " Nor shall any action be maintained for the recovery or possession of any intoxicating liquor, or the value thereof, except in cases where persons owning or possessing such liquor, with lawful intent, may have been illegally deprived of the same."

The statute says this plaintiff shall not maintain his action, because he owned the liquor with unlawful intent. The language is plain and unmistakable. The majority opinion says, in effect, the plaintiff may recover although he kept the liquors to be sold in violation of law. I prefer to follow and obey the statute, and to stand by the previous decisions of this court. I do so without any eulogy of temperance, which I endeavor to practice, or denunciation of the statute enacted to maintain it, which I strive to enforce.

In my opinion the judgment of the District Court should be affirmed, but the majority say it shall be

Reversed.