## KOHN and another *v.* MELCHER.

*(Circuit Court, S. D. Iowa, W. D.* January 3, 1887.)

**1. INTOXICATING LIQUORS—CONSTITUTIONALITY OF IOWA CODE, §§ 1523, 1526.**

Iowa Code, §§ 1523, 1526, limiting the giving of licenses to certain classes of citizens of Iowa to buy and sell intoxicating liquors for mechanical, medicinal, culinary, and sacramental purposes only, do not, by preventing citizens of other states from selling liquors in other states, interfere with the freedom of interstate commerce, violate the constitutional guaranty to the citizen of each state all the privileges and immunities of citizens in the several states, and do not "abridge the privileges or immunities of citizens of the United States," since the purpose and effect of the act is to make a safeguard against the unlawful selling of liquors, and not to discriminate against citizens of other states.

**2. SAME—SELLER CITIZEN OF ANOTHER STATE—IOWA CODE, § 1550.**

Iowa Code, § 1550. provides that all "payments or compensation for intoxicating liquors sold in violation of this chapter shall be held to have been received in violation of law, and against equity and good conscience, and to have been received upon a valid promise and agreement of the receiver, in consideration of the receipt thereof, to pay, on demand, to the person furnishing such consideration, the amount of said money." *Held,* not to apply to payments on a sale for lawful purposes, but invalid by reason of the fact that the seller was a citizen of another state.

At Law. Demurrer to answer and counter-claim.

*Wright, Baldwin & Haldane,* for plaintiffs.

*Lehmann & Park* and *Rockafellow & Scott,* for defendants.

SHIRAS, J. From the averments of the pleadings in this cause, it appears that plaintiffs reside and do business in Rock Island, Illinois, as rectifiers and wholesale dealers in spirituous liquor; that the defendant is and has been a, properly qualified and registered pharmacist at Atlantic, Iowa, holding a permit from the board of supervisors of Cass county, authorizing him to buy and sell intoxicating liquors for purposes not prohibited by the statutes of Iowa; that during the years 1881, 1882, 1883, and 1884 the plaintiffs sold to defendant about $6,500 worth of intoxicating liquors; that plaintiffs claim there is due from defendant the sum of $1,000, to recover which suit is brought.

In the answer and counter-claim filed in the case it is averred that the liquors were sold in violation of the statute in Iowa, in that the same were sold by plaintiffs at the town of Atlantic, Iowa, the plaintiffs not being authorized under the laws of Iowa to sell intoxicating liquors for any purpose. The counter-claim is brought for the purpose of recovering back from plaintiffs the amounts heretofore paid upon the account in question, under the provisions of section 1550 of the Code of Iowa.

The demurrer to the answer and counter-claim presents the question whether, under the statutes of Iowa in force during the years 1881 to 1884, inclusive, persons residing and carrying on business as rectifiers and wholesale dealers in states other than Iowa could lawfully sell intoxicating liquors to be resold for culinary, sacramental, medicinal, and mechanical purposes, to a registered pharmacist doing business in Iowa, and holding a proper permit authorizing him to sell liquors for the pur-

pose named, provided the contract of sale between the non-resident whole-sale dealer and the registered pharmacist was made within the state of Iowa, and at the residence of the latter party.

By section 1523 of the Code it is provided that "no person shall man-ufacture or sell, by himself, his clerk, steward, or agent, directly or in-directly, any intoxicating liquors, except as hereinafter provided." Sec-tion 1526 enacts that "any citizen of the state, except hotel keepers, keep-ers of saloons, eating-houses, grocery keepers, and confectioners, is hereby permitted, within the county of his residence, to buy and sell intoxicat-ing liquors for mechanical, medicinal, culinary, and sacramental pur-poses only, provided he shall first obtain permission from the board of supervisors of the county in which such business is conducted, as fol-lows." Sections 1527 to 1532, inclusive, define the steps to be taken to procure the permit named in section 1526, one of the requirements be-ing that the applicant must be a citizen of the state of Iowa.

These several sections of the Code were in force when the liquors in question were sold by plaintiffs to defendant; and as it is admitted by the demurrer that the liquors were sold in Iowa, and that the plaintiffs did not have a permit authorizing them to sell such liquors, it follows that the sale was contrary to the express provision of the statute, and therefore invalid, provided such provisions are legal and applicable.

Upon behalf of plaintiffs it is argued that the statute expressly recog-nizes the use of liquors, for medicinal, mechanical, culinary, and sacra-mental purposes, as being entirely proper, and does not forbid citizens of Iowa from manufacturing and selling liquors for such purposes; and that while the state may have the right to regulate the sale thereof, still such regulations must not discriminate in favor of the citizens of the state as against the citizens of other states; that the right to sell liquors for the purposes named cannot be permitted to citizens of Iowa, and be wholly refused to citizens of other states, without interfering with the freedom of interstate commerce, and violating that provision of the fed-eral constitution which guaranties to the citizen of each state all the priv-ileges and immunities of citizens in the several states, and also the pro-vision which declares that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

If the provisions of the statute above cited are intended to control the commerce in liquors to be used for mechanical and other legal purposes, so as to secure the traffic therein to citizens of Iowa, and exclude all others from participation therein, thus intentionally discriminating in favor of the citizens of Iowa, it would seem clear that the sections of the statute providing for the exclusion of all, save citizens of Iowa, from the right to engage in such traffic, would be unconstitutional and void.    Com-merce between the states cannot be said to be free, if, by the laws of a state, the sale of a commodity is forbidden if produced or manufactured in another state, but is permitted if of home production or manufacture; or if citizens of other states are forbidden, by reason of such citizenship, to engage in the manufacture or sale of a commodity within a state, while the right to engage therein is permitted to the citizens of the latter

state. Laws regulating trade and commerce, and which are intended to secure to the citizens or products of one state exclusive or superior rights and advantages, at the expense of the citizens of other states, cannot be sustained. *Ward* v. *Maryland*, 12 Wall. 418; *Welton* v. *Missouri*, 91 U. S. 275; *Tiernan* v. *Rinker*, 102 U. S. 123; *County of Mobile* v. *Kimball*, Id. 691; *Webber* v. *Virginia*, 103 U. S. 351.

The mere fact, however, that certain state laws may, more or less directly, affect interstate commerce, or persons engaged therein, is not always proof that such laws are beyond the power of the state to enact, or that they violate any of the provisions of the federal constitution. There is reserved to the several states the right of police regulation; that is to say, the power to enact laws promotive of domestic order, morals, health, and safety. State statutes solely intended for the promotion of these objects would not be rendered invalid by the fact that thereby interstate commerce might be somewhat restricted. In the language of the supreme court in *Sherlock* v. *Alling*, 93 U. S. 99–103:

"In conferring upon congress the regulation of commerce, it was never intended to cut the states off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce, and persons engaged in it, without constituting a regulation of it, within the meaning of the constitution."

That the states, for the purpose of restricting and eradicating the evils arising from the traffic in intoxicating liquors as a beverage, have the right to enact laws prohibitory thereof, cannot be questioned. *License Cases*, 5 How. 504; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Foster* v. *Kansas*, 112 U. S. 201; S. C. 5 Sup. Ct. Rep. 8.

If, however, in such acts, provisions are inserted which discriminate in favor of liquors manufactured in the state as against those manufactured in other states, or which protect the home dealer, by exacting a tax or license fee from the non-resident dealer, and not from the home dealer, then such provisions would be contrary to the federal constitution. Thus in *Walling* v. *People*, 116 U. S. 446, S. C. 6 Sup. Ct. Rep. 454, it was held that a state statute imposing a tax upon persons, not residents of Michigan, who should engage in that state in the business of selling intoxicating liquors to be shipped into the state, but which did not impose a similar tax upon the sale of liquors manufactured in Michigan, was repugnant to the constitution of the United States.

Section 1555 of the Code of Iowa declares that, "whenever the words 'intoxicating liquors' occur in this chapter, the same shall be construed to mean alcohol, and all spirituous and vinous liquors: provided, that nothing herein shall be so construed as to forbid the manufacture and sale of beer, cider from apples, or wine from grapes, currants, or other fruits grown in this state."

The effect of this section is to enact that the sale of wine is forbidden, unless it is manufactured from the products of this state. This provision is clearly an attempt to discriminate in favor of the products of the

state as against those of other states; and no reason is perceived why it does not fall within the rule, so often announced by the supreme court, that legislation forbidding the sale of a commodity if of foreign production, but permitting it if of home production, cannot be sustained as a police regulation, but is clearly an attempt to restrict interstate commerce, and to discriminate against the products and citizens of other states. So long, therefore, as the proviso in section 1555 continued in force, authorizing the sale of wine manufactured from the products of the state, so long was the inhibition against the sale of wine manufactured in other states inoperative and void.

The principal question presented by the demurrer, *i. e.*, whether the provisions of the statute restricting the right to sell liquors in Iowa, for mechanical and other legal purposes, to citizens of the state are or are not a violation of the federal constitution, is not so readily answered. In the language of the supreme court, in *Railroad Co.* v. *Husen*, 95 U. S. 465, "the police power of a state cannot obstruct foreign or interstate commerce beyond the necessity for its exercise, and under color of it, objects, not within its scope, cannot be secured at the expense of the protection afforded by the federal constitution;" and yet, as is said in the same case, "many acts of a state may, indeed, affect commerce, without amounting to a 'regulation' of it, in the constitutional sense of the term. And it is sometimes difficult to define the distinction between that which merely affects or influences and that which regulates or furnishes a rule for conduct."

In the statutes in force up to the year 1884 no provision is found which prevents persons holding a permit to sell liquors in Iowa from purchasing those manufactured in other states, nor from making purchases thereof from citizens of other states at places outside the boundaries of Iowa. No prohibition or discrimination is based upon the place of their manufacture. So far, therefore, as the products of other states are concerned, they are placed upon an equality with those of the state. The discrimination complained of arises from the fact that the statute provides that no one can sell in Iowa unless he has a permit, and that no one save a citizen of Iowa can procure such permit.

It will be noticed that the limitation on the right to sell affects the citizens of the state as well as those of other states, in that the permit can only be procured by a resident of a county in which the permit is issued, and limits the right to sell to a particular house to be named in the permit. There is no doubt that the result of the statute is to entirely deprive citizens of other states of the right to sell in Iowa intoxicating liquors to be used for mechanical and the other legal purposes. It also practically confines the right to sell to a small part of the citizens of the state. Was it the intent of the legislature in enacting these provisions of the statute to grant greater privileges to the citizens of the state than are granted to those of other states, in carrying on the business of buying and selling liquors for legal purposes, or were these provisions enacted as safeguards against violations of the law prohibiting sales of liquors to be used as a beverage?

The difficulty of preventing evasions of the prohibitory law is well known, and it is apparent that the permission to sell for medical and other legal purposes, unless carefully guarded and restricted, might prove to be a ready means for defeating the object and purpose of the statute. The state has the right to adopt all proper police regulations necessary to prevent evasions or violations of the prohibitory statute, and to that end, and for that purpose, has the right to restrict the sale for legal uses to such places, and by such persons, as it may be deemed safe to intrust with the right to sell. In cases in which it has been held that the state legislation could not be upheld, it will be found that the provisions of the statute were not intended to guard the community against evils arising from some traffic deemed injurious to the common weal, but were intended to secure to the citizens or products of the state an undue advantage; or, in other words, under the pretext or guise of a police regulation, the true intent of the legislation was to place the products or citizens of other states at a disadvantage in carrying on commerce or business, and thereby secure the profits thereof to the citizens of the state enacting the particular law complained of. If the argument of counsel for plaintiffs is well founded, it would follow that under the fourteenth amendment to the constitution of the United States, prohibiting the abridgment of the privileges or immunities of citizens of the United States, it would be beyond the power of the states to limit, as among its own citizens, the right to sell liquors for legal purposes, or to limit the right to sell poisons of any kind, or to require that steam-boilers or other dangerous machinery can only be operated by skilled engineers.

The fourteenth amendment was not adopted for the purpose of limiting the fair and proper exercise of the power of police regulation on part of the states. An impartial examination of the several sections of the statute of Iowa on the subject of the sale of liquors for legal purposes, shows that the restrictions complained of were adopted, not for the purpose of securing an undue advantage to the citizens of the state, but for the purpose of preventing violations of the prohibitory law of the state; and although, in effect, the citizens of other states, as well as the larger part of the citizens of Iowa, are debarred from selling in Iowa liquors to be resold for legal purposes, and in that sense commerce between the states may be affected, yet this is but an incidental result; and as the intent and purpose of the restrictions, *i. e.*, preventing violations of the prohibitory law, are within the police power of the state, it cannot be held that the sections of the statute under consideration violate any of the provisions of the federal constitution; and, being therefore valid and binding, it follows that a sale of intoxicating liquors made in Iowa for any purpose, by a person not holding a permit to sell, is unlawful, and no action can be maintained to recover the price of such liquors. The demurrer to the answer must therefore be overruled, and it is so ordered.

The demurrer also applies to the counter-claim in which defendant seeks to recover judgment for the amounts paid on account for the liquors sold under the circumstances hereinbefore stated. Counsel seem to have

assumed that the decision of the question presented by the demurrer to the answer would also settle the question as to the right of the party to recover back the sums paid on account, and hence have not discussed this question in argument. It may be that this assumption is entirely well founded, and it certainly finds support in the opinion of the supreme court of Iowa in the case of *Becker* v. *Betten*, 39 Iowa, 668. The question arises on the construction of section 1550 of the Code, which provides that "all payments or compensation for intoxicating liquors sold in violation of this chapter   *   *   *   shall be held to have been received in violation of law, and against equity and good conscience, and to have been received upon a valid promise and agreement of the receiver, in consideration of the receipt thereof, to pay on demand, to the person furnishing such consideration, the amount of said money."

When liquors are sold to a person in Iowa to be resold for use as a beverage, there is no question that the parties intend to violate the prohibitory law of the state, and the vendor knows that the liquors which he furnishes for this purpose to the vendee are contraband, and, in effect, have no legal value in the hands of the vendee, as he has no right to sell them in Iowa for use as a beverage, and cannot make them the subject of a legal sale. In all such cases there is a foundation for the theory of the statute that, as the vendor of the liquors did not transfer to the vendee anything of legal value, all payments made therefor are without consideration, and the vendee may recover back the payments thus made because he received no consideration therefor; that is, nothing of any legal value. In cases, however, where the liquors are sold to be used for legal purposes, to a person having the right to sell the same, the vendee received from the vendor something having in his hands a legal as well as actual value. The statute of Iowa, in order to close the avenues to evasions of the prohibitory law, has enacted that no one in Iowa shall have the right to sell liquors, even for legal uses, except parties holding permits. The sales made in the present case were made in violation of the law of Iowa, not because the liquors were sold to be used as a beverage, but because, while the purpose for which they were sold was entirely legal, the party selling had not the legal right so to do. The inhibition applies to the person, and not to the property.

The plaintiff, not having the legal right to sell, could not make a legal contract of sale in Iowa, and hence, coming into Iowa to seek a recovery for the liquors sold, he cannot maintain the action, because he cannot show a legal contract with defendant. Suppose, however, the defendant should go to Illinois, and, while there, should pay, in Illinois, to the plaintiff, the value of the liquors sold in Iowa, and then, upon his return to Iowa, should bring suit to recover back the money thus paid in Illinois. In this case, the vendor of the liquors would not be seeking the aid of the law of Iowa to enforce a contract of sale for liquors. The vendee would be seeking to recover back, in Iowa, money paid, not in Iowa, but in Illinois. The consideration for which he paid the money was liquors which had a legal and actual value in his hands. True, they were sold under such circumstances as that, in Iowa, an ac-

tion for their value could not be maintained by the vendor; but when they passed into the possession of the vendee he had a right to sell the same. In his hands, for the purpose for which they were bought, they were property having a legal value. Having thus received the same, if the vendee should then go to Illinois, and the parties, recognizing the fact that the contract of sale was void, should in Illinois make a new contract in regard to the same, would not the latter contract be valid?

If a person sells liquors to a saloon-keeper in Iowa, with the intent that the same should be resold as a beverage in violation of the law, and should deliver the same, he cannot maintain an action for the price or value thereof, nor could he maintain an action of replevin to recover back the possession of the goods. The courts of Iowa would afford him no aid to recover liquors, the possession of which he parted with, with the intent that the same should be used in violation of the laws of the state. Would the same rule apply if a resident of Illinois should, in Iowa, sell liquors to be used for legal purposes only, to a person authorized to sell in Iowa? In such case, the contract of sale would be void, because the resident of Illinois had not authority to sell without a permit, which he is debarred from getting because the same can only be issued to a citizen of Iowa. Could not the vendor, under these circumstances, demand back the liquors, as long as they remained in possession of the vendee, and, if necessary, retake possession by proceedings in replevin? True, he had violated the law of Iowa by selling without a permit, but the violation of the statute did not consist in selling liquors to be used as a beverage, or in introducing liquors into the state to be used or sold by others for an illegal purpose, but in selling to an authorized person, for legal purposes, without having a permit.

The liquors, when delivered to the vendee, would not be liable to be seized and confiscated under the sections of the statute authorizing the seizure and destruction of liquors intended to be used in violation of the statute. In whom would be the legal title to the liquor? Would it not be in the vendor? If so, why may he not retake the possession of the property? However this may be, if the vendee, having received the liquors, and sold the same in Iowa, for a lawful purpose, should then, in Illinois, pay the value thereof to the vendor, could he maintain an action in Iowa to recover back the money thus paid, even under the provision of section 1550? In what respect could it fairly be said that the vendor, in receiving payment in Illinois, violated any law of Iowa? The liquors he had delivered to the vendee had not been used for any purpose prohibited by the statutes of Iowa. They lawfully belonged to the vendor, were property in his hands, and were property when delivered to the vendee, and were not delivered to the vendee to be used for any illegal purpose.

Under such circumstances, while the vendor could not maintain an action in Iowa on the contract for sale, was there anything unlawful in receiving, and in the vendee paying him, the value of the goods? If not, then upon what ground can the vendee seek to recover back the sums voluntarily paid? The only answer is that the statute of Iowa so

provides, and it cannot be denied that the section is very broad in its terms; yet, as is said by the supreme court of Iowa in *Monty* v. *Arueson*, 25 Iowa, 383, "the act must not receive a construction that will render its provisions absurd in effect, or cause it to work manifest injustice and absolute dishonesty and crime."

In the case of *Becker* v. *Betten*, 39 Iowa, 668, the parties were both residents of Iowa, and it was therein held that payments made for liquors sold to one who was authorized to sell for legal purposes might be recovered back. The payments were made in Iowa, to one who was then subject to the laws of the state, and who knew that the laws of the state forbade his receiving such payments. In case, however, the vendor does not live in the state, and the payments are not made in Iowa, should or should not a different rule apply? If the money paid under such circumstances can be recovered back, it is equivalent to saying that it was the legal duty of the vendor living in Illinois, to refuse to receive in Illinois the money value of the liquors which he had delivered to the vendee living in Iowa, to be used and sold for legal purposes, because the contract for sale could not be enforced by reason of the fact that the vendor had not a permit authorizing him to sell.

The want of a permit rendered the vendor legally incompetent to make a valid contract of sale, but he did not deliver the goods for the purpose of aiding the vendee in using and selling the same for any purpose forbidden by the law of Iowa, and he is not, therefore, open to the charge of attempting to introduce liquors into Iowa to be used as a beverage, which use it is the sole purpose of the prohibitory law to prevent. He had delivered to the vendee liquors which had a legal and actual value in Iowa in the hands of the vendee, to be used for lawful purposes. The contract of sale he could not enforce in Iowa, but did the invalidity of the contract caused by the lack of a permit to sell on part of the vendor so far destroy his rights in the liquors that he might not afterwards lawfully receive payment therefor, voluntarily made in the state of Illinois? If he could lawfully receive payments, certainly the amount paid cannot be recovered back in an action brought by the payor.

It seems to me that the proper construction of section 1550 does not justify a right of recovery under such circumstances, and that this section is intended to apply only to payments made for liquors sold to be used as a beverage. The latter view of the section, however, is not sustained under the decision in *Becker* v. *Betten*, and the query is whether the doctrine therein announced is to be extended to cover payments made beyond the boundaries of the state to parties not subject to the laws of the state. This exact question arises upon the record in this case, because it is shown by the pleadings that the plaintiffs are citizens of Illinois, and that the payments sought to be recovered back were made to them, and therefore presumably in Illinois.

Understanding that counsel purpose carrying the constitutional question presented by the demurrer to the answer to the court of final resort, it would seem best to have all the questions in the case decided at once, and to that end the demurrer to the counter-claim will be sustained.